## Caroline W. Benneson *et al.*

*v.*

## William T. Savage *et al.*

*Filed at Springfield October 31, 1889.*

1. Pleading and evidence—*in chancery—instrument sued on made a part of the bill—as controlling the pleading.* On bill to foreclose a trust deed, a variance between the contract described in the bill and that in the trust deed securing the same is unimportant, when the contract and trust deed are made part of the bill as exhibits. In such case, the court will give the contract and trust deed the legal effect to which they may be entitled, even though that may have been misconceived by the pleader.

2. A bill in chancery to foreclose a trust deed recited that the interest on the principal note secured by the trust deed should be paid "according to interest coupons thereto annexed." The coupons were made a part of the bill as exhibits: *Held,* that the coupons must be read to ascertain their precise terms, and if it was thereby shown that the coupons described in the bill and those described in the deed of trust were the same, there will be no variance.

3. Suretyship—*extension of time—release.* A mortgage or deed of trust of a third party, given as a security for a note of the principal debtor, recited that it was provided in the note that the holder thereof might extend the time for the payment of the whole or any part thereof, on the maker executing coupons for interest to accrue thereon during such extension: *Held,* that an extension of the time of payment of the note by the holder upon the maker giving such coupons, did not release the mortgage security.

4. Same—*failure of holder of debt to satisfy the same by a purchase of land from the principal debtor.* The holder of a note secured by the mortgage of a third person, bought lands of the principal debtor, giving a note therefor in a sum greater than that so secured. These lands were attached for the debt of the vendor, and the sale was declared fraudulent and void: *Held,* on bill to foreclose the mortgage, that the holder of the note so secured could not be charged with the value of these lands, which were taken in payment of his grantor's debts.

5. Interest coupons — *on extension of time—rate of interest—and whether the coupons are within the power given.* A mortgage given to secure the debt or note of another authorized the holder of the note to extend the time of payment upon the maker giving coupon notes for the interest which would accrue during the extension: *Held,* that au-

thority to execute coupons necessarily implied authority to fix the rate of interest they should bear after maturity at any rate not prohibited by law, such coupons being a part of the debt secured by the mortgage.

6. A mortgage to secure the debt of another, evidenced by a note, and coupons for the interest, provided that the holder might extend the time of payment of the whole or any part of the debt upon the debtor giving further coupons for the interest on the time so extended. The note required that both the principal and the interest should be paid at the payee's banking house in Quincy, Illinois, with current rate of exchange on New York. It was objected, on bill to foreclose, that the coupons omitted the words, "with the current rate of exchange on New York:" *Held,* that these words were not necessary for two reasons : First, because neither the deed of trust nor the note required them to be inserted in the coupons; and second, because their omission in no way tended to change or enlarge the liability of the mortgagor.

7. REVOCATION OF POWER—*by death of donor—of a power coupled with an interest.* A mortgage given by one to secure the note of another, with interest coupons, gave a power to the holder of the note and coupons to extend the time of payment on certain conditions: *Held,* that the death of the mortgagor did not revoke the power, as it was coupled with an interest in the creditor.

WRIT OF ERROR to the Appellate Court for the Third District ;—heard in that court on writ of error to the Circuit Court of Adams county; the Hon. S. P. SHOPE, Judge, presiding.

William T. Savage filed his bill in chancery, in the circuit court of Adams county, against Charles A. Savage and others, to foreclose a certain mortgage, which was in form a deed of trust. The following statement, taken from the printed argument filed by the counsel for plaintiffs in error, is a sufficiently full statement of the pleadings :

"The case set up in the bill, in brief, is this : That on March 29, 1873, Charles A. Savage, being indebted to the banking firm of L. & C. H. Bull in the sum of $6000, 'made his certain contract in writing' with them for the payment of the same in three years after said date, with interest thereon, payable semi-annually, at the rate of nine per cent per annum till due, and ten per cent thereafter, which said contract in writing, or so much of it as remained unpaid at the time the bill was filed,

23—130 ILL.

consisted of a promissory note, with divers recitals and conditions therein, and two original interest coupons, Nos. 5 and 6, thereto attached; that on the same day,—March 29, 1873,—said Charles A. Savage, Elvey W. Savage and Anna Wells, to secure the said contract of indebtedness, executed the said trust deed; that afterwards said firm of L. & C. H. Bull assigned said contract of indebtedness, or, rather, the parts thereof that remained unpaid, without recourse, by their indorsements on the said note and two coupons, respectively; that afterwards, when said principal sum became due, exclusive of grace, March 29, 1876, William T. Savage extended the credit on the same to April 1, 1878, and attached to the said original contract four additional interest coupons, numbered 7, 8, 9 and 10, executed by the said Charles A. Savage, to cover the interest to accrue during said extension. Each of said interest coupons—original and extension—has a forfeit or penalty clause added, that if not paid at maturity it shall bear interest from maturity at the rate of ten per cent per annum; that afterwards, in June, 1879, all of said instruments—said note, two original coupons and four extension coupons—were merged in a judgment of the circuit court of said Adams county, against said Charles A. Savage, for $8652.78, in a suit at law of said William T. Savage against said Charles A. Savage; that said William T. Savage, as holder of said contract of indebtedness, under the provisions of said trust deed, paid taxes, $344.18, and insurance, $363.50, on the premises in controversy; that said note and interest, and said judgment, and said disbursements for taxes and insurance, and arrears of interest thereon, are due and unpaid, etc.; that Elvey W. Savage died July 19, 1873, the owner of record of the premises in said trust deed, whereby the trustees in said trust deed became ousted of their power to sell," etc.

The defenses set up in the answer of the plaintiffs in error to the bill, are mainly based upon the alleged facts that the property in controversy was and is the property of the plain-

tiffs in error, and that by virtue of the trust deed it occupied the position of a surety for the indebtedness in said trust deed described, with all the rights and immunities incident to such position. Said defenses are, in short, as follows :

"*First*—That the contract of indebtedness set up in the bill, and claimed to be secured by said trust deed, is not the contract of indebtedness described in said trust deed, but another and essentially different contract of indebtedness, and therefore is not and never was secured by said trust deed.

"*Second*—If said two contracts of indebtedness should be construed to be one and the same contract of indebtedness, and to be secured by said trust deed as against the plaintiffs in error, as sureties, aforesaid, in respect to their said property, then the contract of the extension of the credit, alleged in the bill, without the knowledge or consent of the plaintiffs in error, or either of them, as alleged in the answer, released and discharged said property from the lien of said trust deed.

"*Third*—If, in the opinion of the court, said premises were not released from the lien of said trust deed by said extension contract, then William T. Savage, at the time said contract of indebtedness matured, being fully informed of the utter insolvency of Charles A. Savage, the principal debtor, and having, at the same time, within his power and control a sufficient amount of the funds and assets of said Charles A. Savage to fully discharge said contract of indebtedness, and having a perfect right to so apply said funds, and failing and neglecting so to do, these circumstances, in connection with other affirmative acts of the said William T. Savage, done at the same time and shortly thereafter, indicative of bad faith towards said sureties, operated to release, and did release, said premises from the lien of said trust deed.

"*Fourth*—If, in the opinion of the court, neither of the above defenses proves available, then a series of transactions between said William T. Savage and said Charles A. Savage, themselves alone or in conjunction with others, extending from April 21,

1875, to May 26, 1876, inclusive, and including said assignment, said extension and said neglect to discharge said contract of indebtedness with said Charles' own funds, all fully set up in said answer, and all done and suffered in bad faith toward said sureties, and all done with the fraudulent design and purpose of removing, then and forever, all the property and assets said Charles had in the world, from the reach of said sureties for the payment of the debt for which their property was bound, as aforesaid, to the great damage and injury of said sureties, had the effect, in law, to, and did, in fact, discharge said premises from the lien of said trust deed."

A cross-bill was filed, which is but an amplification of the answer. It charges that none of the defendants in error has, in fact, any interest in or claim or lien upon said premises in controversy, but if either of them has any such claim, interest or lien, such claim, interest or lien is subject and subordinate to the title and rights of the plaintiffs in error therein. It asks that said trust deed be declared and decreed cancelled, and for naught held; that the trustees therein be required to cancel the same of record; that the title of the plaintiffs in error to the premises described in said trust deed be decreed by the courts to be superior and paramount to all and every of the claims of each and every of the defendants in error upon the same premises. The cross-bill was taken as confessed against defendants in error, Minerva Merrick, Edward Wells, Edward H. Buckley, Arathusa Woodruff, and the Board of Education of the city of Quincy, Illinois, and decree entered. Answer was filed by the other defendants thereto, putting in issue its allegations.

The cause was heard on bill, exhibits, answer, cross-bill, answer and proofs, and the court decreed that the cross-bill be dismissed, and that complainant have foreclosure as prayed in and by the original bill, and that decree was affirmed on error, in the Appellate Court for the Third District. The

record comes to this court by error on the judgment of the Appellate Court affirming the decree of the circuit court.

Other facts material to an understanding of the case are stated in the opinion of the court.

Mr. W. H. BENNESON, for the plaintiffs in error:

Property of one person pledged or mortgaged to answer for the debt of another, occupies the position of a surety, and anything which discharges a surety will discharge such pledged or mortgaged property. *White* v. *Ault,* 19 Ga. 551; *Robinson* v. *Gee,* 1 Ves. Sr. 251; *Ryan* v. *Shawneetown,* 14 Ill. 20; *Hill* v. *Whitmer,* 2 Phil. 72; *Lowry* v. *McKinney,* 68 Pa. St. 292.

A wife who joins her husband in a mortgage of her own property to secure his debt, is a surety, and entitled to all the rights and privileges as such. Cord on Rights of Married Women, sec. 522; *Neimcewicz* v. *Gahn,* 3 Paige, 614; *Hawley* v. *Bradford,* 9 id. 200; *Fitch* v. *Cotheal,* 2 Sandf. Ch. 29; *Loomer* v. *Wheelright,* 3 id. 135; *Vartie* v. *Underwood,* 18 Barb. 562.

The contract of a surety is to be strictly construed, and is not to be enlarged or extended by implication. *Reynolds* v. *Hall,* 1 Scam. 35; *Field* v. *Rawlings,* 1 Gilm. 581; *Sharp* v. *Bedell,* 5 id. 88; *Waters* v. *Simpson,* 2 id. 570; *Railroad Co.* v. *Higgins,* 58 Ill. 128; *Warner* v. *Campbell,* 26 id. 282; *Mix* v. *Singleton,* 86 id. 194; *People* v. *Tompkins,* 74 id. 482; *Phillips* v. *Manufacturing Co.* 88 id. 305; *Ryan* v. *Shawneetown,* 14 id. 20; *Miller* v. *Stewart,* 9 Wheat. 680; 5 Cond. 727; *Stull* v. *Hance,* 62 Ill. 52.

Any material alteration in the contract made by the creditor and principal debtor, or by either with the assent of the other, without the consent of the surety, discharges the surety. Theobald on Principal and Surety, 119; *Waters* v. *Simpson,* 2 Gilm. 570; *Cunningham* v. *Wrenn,* 23 Ill. 64; *Newlan* v. *Harrington,* 24 id. 206; *People* v. *Organ,* 27 id. 27; *Benedict* v. *Miner,* 58 id. 19; *Ryan* v. *Shawneetown,* 14 id. 20; *Hobbs*

v. *Rue,* 4 Pa. St. 348; *Britton* v. *Dierker,* 46 Mo. 591; *Bank of Commerce* v. *McChord,* 4 Dana, 191; *Boatt* v. *Brown,* 13 Ohio St. 364; *Fulmer* v. *Leitz,* 68 Pa. St. 237; *Neff* v. *Horner,* 63 id. 327; *Kountz* v. *Hart,* 17 Ind. 329; *Dewey* v. *Reed,* 40 Barb. 16; *Bank of Limestone* v. *Penick,* 2 T. B. Mon. 98; *Hall* v. *McHenry,* 19 Iowa, 521; *Pahlman* v. *Taylor,* 75 Ill. 629; *Haines* v. *Dennett,* 11 N. H. 180; *Agawam Bank* v. *Sears,* 4 Gray, 95; *Whitcher* v. *Hall,* 5 B. & C. 269.

If the conditions upon which a surety agrees to be bound are known to the creditor, and they are not complied with, the surety is discharged. *Copp* v. *Smith,* 3 Scam. 177; *Cunningham* v. *Wrenn,* 23 Ill. 64; *Strickler* v. *Cunningham,* 58 id. 293; *Burt* v. *McFadon,* id. 479; *Jones* v. *Keer,* 30 Ga. 93; *Bacon* v. *Chesney,* 1 Stark. N. P. 192; *Campbell* v. *French,* 6 T. R. 200; Archibald on Principal and Surety, 154.

A valid agreement between the creditor and the principal debtor, without the consent of the surety, for an extension of credit on the indebtedness, discharges the surety. *Waters* v. *Simpson,* 2 Gilm. 570; *Davis* v. *People,* 1 id. 409; *Galbreath* v. *Fullerton,* 53 Ill. 127; *Ryan* v. *Shawneetown,* 14 id. 20; *Warren* v. *Campbell,* 26 id. 282; *Flyn* v. *Meed,* 27 id. 323; *Kennedy* v. *Evans,* 31 id. 258.

The surety has the right, when the debt for which he is bound becomes due, to resort to equity to compel the creditor to the enforcement of the contract against the principal debtor, or he can pay the debt himself, and proceed against the principal debtor for repayment, and if deprived of either of these rights, without his consent, by the creditor, he is discharged. *King* v. *Baldwin,* 2 Johns. Ch. 554; *Taylor* v. *Beck,* 13 Ill. 376; *Flynn* v. *Meed,* 27 id. 323; *Waters* v. *Simpson,* 2 Gilm. 570.

The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction; and while the creditor is not bound to take active measures to collect the debt of the principal debtor, good faith requires that he shall do no affirmative act that will operate

to the prejudice of the surety, and if he does any such affirmative act, the surety will be discharged. 1 Story's Eq. Jur. secs. 323, 325; *Hobbs* v. *Rue,* 4 Pa. St. 348; *People* v. *White,* 11 Ill. 341; *Pearl* v. *Wellmans,* id. 352; *Taylor* v. *Beck,* 13 id. 376; *Moor* v. *Bowmaker,* 3 Price, 214; 7 id. 223.

Fraud by the creditor, in relation to the obligation of the surety, or by the principal debtor, with the knowledge or assent of the creditor, will discharge the surety. *Boynton* v. *Robb,* 22 Ill. 525; *Phares* v. *Barbour,* 49 id. 370; *Kennedy* v. *Evans,* 31 id. 258.

A surety is entitled to the benefit of any security the creditor holds for the payment of the same debt, and if the creditor parts with it, or by his gross neglect it is lost, the surety is discharged *pro tanto.* Story's Eq. Jur. sec. 326; *Phares* v. *Barbour,* 49 Ill. 370.

When the creditor of an insolvent debtor has means of the debtor, actually or potentially, in his hands, sufficient to satisfy the debt, with no restrictions as to the application of said means, and he does not retain the same, or if he diverts the same to other purposes than the payment of the debt, the surety is discharged, at least *pro tanto. Law* v. *East India Co.* 4 Ves. 824; *Wright* v. *Austin,* 56 Barb. 13; *Fegley* v. *McDonald,* 89 Pa. St. 128; Theobald on Principal and Surety, 143.

A bare authority to do a thing remains revocable at the will of the grantor thereof, until some act is done under it whereby the rights of others are affected; and the death of the grantor before any such act is done, *per se* vacates such authority. Story on Agency, secs. 463, 465; 1 Parsons on Contracts, 73-75.

Mr. WILLIAM W. BERRY, for the personal representatives of William T. Savage, deceased, defendants in error, after a consideration of the evidence, and the facts shown thereby, made the following points, among others:

The money was borrowed by Charles A. Savage, and with his wife's consent expended in improving her property. If he was insolvent, as insisted, and even if her property was not formally pledged to secure the debt, a court of equity would compel satisfaction out of it. But here, the property of the wife that had been benefited by the outlay of the money borrowed by the husband, was pledged for the payment of that money in an instrument executed with all the formalities of the law. In this instrument the contract evidencing the debt, with its provisions for interest and extension of time, was set forth with exceptional particularity, and it is simply trifling to seek to distinguish between the contract signed by Charles A. Savage, promising to pay the money borrowed, and the contract set out in the deed.

But it is not more so than the claim that the security is discharged by reason of the extension of the time of payment of the note. The trust deed makes provision for this, and not only that, but it designates exactly the manner by which this extension is to be evidenced, namely, by annexing coupons to the note.

The coupons, except as to dates and amounts, are copies of those originally attached, as intended by the parties executing the trust deed. The note itself, and the deed of trust reciting it, both provide that the interest after the maturity of the note was to change from nine to ten per cent. With this increase of interest the coupons had nothing whatever to do. The coupons were made in accordance with the contract.

Where a power is coupled with an interest, it is not impaired or revoked by the death of the party giving it. Story on Agency, sec. 477; *Walker* v. *Denison,* 86 Ill. 142.

Nothing was realized from the Nebraska lands, as they were seized on attachment. A careful calculation will show that the decree was not too large.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It will be most convenient to notice the several objections urged in argument against the decree of the circuit court, in their order of precedence upon the record.

*First*—It is objected that the contract described in the bill and that described in the trust deed are not the same, and that therefore the trust deed is not a security for the contract described in the bill. A copy of the trust deed is made part of the bill as an exhibit, and it is therefore unimportant, even if it be conceded that the pleader misconceived its legal effect, for the instrument itself being thus before us, we will give it that legal effect to which it is entitled. *Allen et al.* v. *Woodruff et al.* 96 Ill. 11.

The trust deed recites, among other things, as follows:

"Whereas, the said Charles A. Savage is justly indebted to the party of the third part in the sum of $6000, according to the tenor and effect of a certain promissory note executed by him, of even date with this deed, and payable three years after date, to the order of the said party of the third part, in the aforesaid sum of money, for value received, with interest thereon at the rate of nine per cent per annum from the date of the said note until due, and at the rate of ten per cent per annum after due, until the said principal sum is fully paid,—both principal and interest being payable at the banking house of L. & C. H. Bull, in Quincy, Illinois, with the current rate of exchange on New York. The first payment of interest on said note is to be made on the first day of October, A. D. 1873, for the period ending on that day, and thereafter the interest is to be paid semi-annually, on the first days of April and October in each year, until the last payment of interest, which is to be made for the remaining period on the day of the maturity of the said note, according to interest coupons thereto annexed; and in and by said note it is further provided, that the holder thereof may extend the time for the payment of the

whole or of any part thereof, on the maker executing coupons for interest to accrue thereon during such extension, at a rate not exceeding ten per cent per annum, payable at the dates named in said note for the payment of interest, such coupons to be annexed to said note, and to be evidence of such extension."

The coupons described in the bill provide, that if they are not paid at maturity they shall bear interest after that date at the rate of ten per cent per annum, and this, it is contended, is entirely different from the coupons in the foregoing recital. We are unable to concur in this construction of the recital. The language of the recital, it will be observed, is, that the interest shall be paid "according to interest coupons thereto annexed,"—that is, annexed to the note or contract,—and so the coupons are themselves made a part of the recital, and must therefore be read to ascertain their precise terms. (*Jones et al.* v. *King et al.* 86 Ill. 225.) And when this is done, it is seen that the coupons described in the bill and the coupons described in the recital are the same coupons.

*Second*—It is next objected that the mortgage was released by reason of the extension of the time of the payment of the debt without the consent of the mortgagors, Elvey W. Savage and Anna Wells, who were the real owners of the mortgaged property. The mortgage expressly recites, as was seen *supra,* that it is provided in the note which it secures, "that the holder thereof may extend the time for the payment of the whole or of any part thereof, on the maker executing coupons for interest to accrue thereon during such extension." But it is contended, first, that this does not warrant an extension of time without the consent of the sureties ; and second, that the extension was not made in accordance with the terms of the deed.

1st. Counsel insist that the mortgagors do not, by this, do any more than consent to the continuance of the mortgage in the event they shall themselves hereafter consent to an extension of the contract. But that, as has been seen, is not

the purport of the language employed, and, plainly, it is not within its reasonable contemplation. The mortgagors consent that the holder of the note may extend the time for its payment upon the maker executing and annexing to the notes coupons for interest,—that is, they consent, if that shall be done, the mortgage shall continue,—for there is nothing else to which their consent can have effective application; and this is put beyond reasonable doubt by the condition of defeasance, wherein it is recited:

"Now, if the said Charles A. Savage, his heirs, executors or administrators, shall well and truly pay, or cause to be paid, unto the said party of the third part, or to the legal holder of the said promissory note, the principal sum therein mentioned, with the interest to accrue thereon, · * * * or as the said principal or interest may become payable by virtue of any extension of time for the payment of said note, which may be made as therein provided, and of the interest coupons to be in that case thereto annexed, * * * then and in that case this deed shall become and be void, and the property hereby conveyed shall be released at the proper cost and charge of the said party of the first part, and their legal representatives. But if the said Charles A. Savage, his heirs, executors or administrators, shall fail to pay, or cause to be paid, to the said party of the third part, or to the legal holder of the said note, any of the principal sum payable thereby, or any installment of interest thereon, at the respective times when the said principal sum, or any installment of interest thereon, shall become due and payable by the tenor and effect of said note and said original interest coupons, respectively, or as the said principal, or any part thereof, or interest thereon, may become payable by virtue of any extension of time for the payment of said note, or any part thereof, which may be made as therein provided, and of the interest coupons to be in that case thereto annexed, * * * then and in such case this deed shall remain in full force and virtue, and the said promissory note, with the in-

terest accrued thereon, and all moneys which may have been advanced and paid by the said party of the third part, or the legal holder or holders of said note, for the purposes hereinbefore expressed, with the aforesaid interest thereon, shall thereupon, each and every of them, in respect to and for the purposes of the trust hereby created, become and be presently due and payable, and the said parties of the second part, or the survivor of them, or the executors or administrators of such survivor, may thereupon at once proceed to sell the property hereby conveyed."

2d. Counsel for plaintiffs in error insist that the only discretion given to the holder of the note is to fix the rate of interest reserved, within the limits prescribed, and that providing that the coupons shall bear interest after that date at the rate of ten per cent per annum, is beyond the power conferred by the mortgage, and hence that it can not be held to secure such a contract. But the executing of a coupon is the executing of an instrument, which, *ex vi termini*, bears interest after maturity,—if no rate is expressed, six per cent; and at the date of executing these coupons, any rate, not exceeding ten per cent, might be fixed by agreement of the parties. (*Harper et al.* v. *Ely et al.* 70 Ill. 581; *Humphreys et al.* v. *Morton et al.* 100 id. 602.) And so, under a familar rule applicable to such cases, authority to execute coupons necessarily implies authority to fix the rate of interest they shall bear after maturity, at any sum not prohibited by law; and it is held that a coupon is a part of the debt covered by the mortgage which secures its bond. Daniell on Neg. Inst. sec. 1491 a; *Gilbert* v. *W. C. V. M., etc. R. R. Co.* 33 Gratt. 599.

It is suggested that there is omitted from these coupons the words, "with the current rate of exchange on New York." There are two plainly sufficient answers to this: First, these words are, by no language of the deed of trust or of the note which it secures, required to be inserted in the coupons. It is required that "both principal and interest" shall be paid "at

the banking house of L. & C. H. Bull, in Quincy, Illinois, with the current rate of exchange on New York;" but this is the language of the note only, and it is nowhere required that such language, or any part of it, shall be embodied in the coupons. Second, the omission of this language in nowise tends to change and enlarge the burden of the mortgagors, and they can not therefore complain of it.

*Third*—It is further objected, that the power to extend the time of payment was a naked power, and that it was revoked by the death of Elvey W. Savage. In our opinion, this is a misapprehension of the character of the power. The trustees, it is conceded, took but a naked power. But this clause was intended to affect the substantial rights of the debtor and the creditor. As is contended by counsel for plaintiffs in error, the extension of the time of payment of the debt without the consent of the surety would operate to release the surety; and so, on like principle, here, such extension would release the mortgage. That could not concern the trustees, but it would materially injure the creditor. To prevent that,—that is, to continue, for the benefit of the creditor, the lien of the mortgage,—this power was inserted,—a power not to the trustees, but to the debtor and creditor, to continue the mortgage as they extended the time for the payment of the money; and so it is a power coupled with an interest, and not revoked by the death of the mortgagor. *Walker* v. *Denison,* 86 Ill. 142.

*Fourth*—It is contended, that when the note secured by this mortgage matured, defendant in error had it within his power to have applied assets of Charles A. Savage in his hands, in full discharge of the debt, but failed to do so, and diverted such assets to other purposes. This is claimed to be proved by a transaction between defendant in error and Charles A. Savage on the 26th of November, 1875, whereby defendant in error purchased of Charles A. Savage ten quarter-sections of land in Nebraska, and, to secure the payment of the purchase money, gave him his promissory note for $10,000, payable on demand,

on which a credit of $2000 was indorsed.    The following are stipulated to be the facts in regard to this transaction:

"After the deed of C. A. Savage to W. T. Savage of these Nebraska lands was recorded in Gage county, Nebraska, where they are located, Jonas B. Aiken, a creditor of said Charles, commenced suit against him in the district court of said Gage county, Nebraska, by attachment, and levied on these lands for the payment of his debt; that while said suit was pending, said W. T. Savage deeded these lands to Olivia T. Savage, wife of said Charles; that said Aiken prosecuted his said suit to judgment and execution, under which said lands were sold by the sheriff of said Gage county to said Aiken, and a deed of the same was executed to him by said sheriff; that thereafter said Olivia T. Savage brought suit in said district court, against said Jonas B. Aiken and others, to set aside said sheriff's deed and remove the cloud thereby created from her said title derived from said W. T. Savage; that said Aiken set up the defense in said suit, that said deeds of C. A. Savage to W. T. Savage, and W. T. Savage to Olivia T. Savage, were made with due notice, and without consideration, and were covinous, fraudulent and void, and sustained said defense, the suit being decided adversely to said Olivia; that said Olivia appealed the case to the Supreme Court of Nebraska, when a final decision was made adversely to said Olivia, as reported in 11 Neb. 323."

No reason is apparent why, under these facts, William T. Savage should be charged with these lands in the present suit. It does not appear but that the claim of Aiken exceeded their entire value, and it is upon plaintiffs in error to show a failure in duty by defendant in error to apply property to the payment of this note.    They have not done so, and it is therefore unnecessary to consider the questions so elaborately discussed, in the argument before us, in regard to the payments claimed to have been made for these lands.

*Fifth*—Argument is pressed upon us to the effect that defendant in error should be charged with the value of a certain house and lot on Broadway, in Quincy. This is not set up in the answer, and therefore, if sustained by evidence, could not be now considered. But we may remark that, in our opinion, it is not so sustained by the evidence.

There is much evidence in this record to which we deem it unnecessary to make any reference. The entire evidence has been carefully considered, and after such consideration we are unable to say that there is any error in the record for which the judgment of the Appellate Court should be reversed. It is therefore affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE SHOPE took no part in the decision of this case.