# SUPREME COURT

OF THE

## STATE OF COLORADO.

APRIL TERM, 1897.

[No. 3525.]

THE BOARD OF COUNTY COMMISSIONERS OF LAKE
COUNTY v. STANDLEY.

1. COUNTY BONDS—CONSTITUTIONAL LAW.

An issue of county bonds based upon an indivisible contract and in ex-
cess of the amount of indebtedness which may be incurred under
the constitution, is void as to the whole issue.

2. SAME.

An issue of funding bonds by a county in exchange for valid warrants
is not a creation of a new debt.

3. SAME.

The validity of a bond issued in compliance with the funding act of
1881 in exchange for outstanding valid county warrants is not af-
fected by the fact that other bonds of the same series were issued
in exchange for invalid warrants.

4. SAME—EVIDENCE.

The test and criterion by which the power of a county to incur indebt-
edness under the constitutional limitation is to be determined is
the assessment of the preceding year, until that of the succeeding
year has been revised by the state board of equalization and certi-
fied to the clerks of the respective counties. When an assessment
has been revised, completed and certified by said board, it super-

sedes the preceding assessment and furnishes the valuation which must determine the power of a county to contract future indebtedness.

5. Same—Burden of Proof.

A county seeking to evade liability on its warrants on the ground that their issue was in excess of the constitutional limit, must assume the burden of proving facts showing their invalidity.

*Appeal from the District Court of Arapahoe County.*

This is an action brought by the appellee against the appellant upon certain coupons aggregating the sum of $6,400, and being for interest on certain bonds issued by Lake county on the 2d day of January, 1882. The complaint in substance avers:

That on the first day of January, 1882, one Thomas Corbett was the owner and holder of certain warrants of the county of Lake, which were in amount, number and date as follows:

No. 484 for the sum of $589.12, dated July 17, 1879.

No. 578 for the sum of $2,500, dated September 1, 1879.

No. 590 for the sum of $800, dated October 2, 1879.

No. 599 for the sum of $1,100, dated October 9, 1879.

No. 601 for the sum of $1,000, dated October 9, 1879.

No. 603 for the sum of $1,000, dated October 9, 1879.

No. 605 for the sum of $1,000, dated October 9, 1879.

No. 994 for the sum of $347.50, dated October 9, 1879.

That said warrants were duly issued for and on account of indebtedness incurred and contracted a long time before the issuance thereof, to wit, on April 26, and on May 3, 1879; and on dates subsequent thereto, and before the valuation of the property of Lake county had reached the amount of one million dollars; that they had been presented and registered in accordance with the statutes in such case made and provided; that said warrants were valid, and evidenced an indebtedness within the constitutional limitation; avers that the assessed value of the property in Lake county for the year 1877 was $364,511.40, and for the year 1878, $603,858.92; that on the first day of January, 1882, there was due on the

warrants above mentioned, for principal and interest, the sum of $10,232.70; that on that date the county of Lake, in compliance with the provisions of the statute in such case made and provided, proceeded to fund the indebtedness of said county, and issued therefor funding bonds of said county, with interest coupons attached; and thereupon delivered to said Corbett ten bonds for $1,000 each, in exchange for the said warrants above mentioned.   These bonds were numbered as follows: 185, 186, 187, 188, 189, 190, 193, 194, 195 and 196; which were duly sold, transferred and assigned to this plaintiff, who is now, and ever since has been the owner and holder of said bonds and the coupons thereto attached.

That the county of Lake paid all the coupons upon each of said bonds up to the coupons following the date of July 1, 1885; that since that time the county of Lake has failed, refused and neglected to pay any of said coupons, and that there is now due from said county on each of said bonds sixteen coupons of $40 each, for and on account of interest on the bonds above mentioned.

A demurrer to the complaint was interposed and overruled.   Thereupon the defendant answered, specifically denying and admitting certain allegations of the complaint; and among other affirmative defenses, averred that at the time the indebtedness evidenced by said warrants and bonds accrued (except the sum of $589 due July 17, 1879) the assessed valuation of said county exceeded one million dollars; and that the aggregate amount of the indebtedness of said county, exclusive of the debts contracted before the adoption of the constitution, exceeded at that time the sum of six dollars on each $1,000 of said valuation.   Defendant further averred that the assessed valuation of the county of Lake for the year 1879 was the sum of $3,485,628; for the year 1880, the sum of $11,426,189; for the year 1881, the sum of $16,423,403, subsequently and in the year 1882, rebated to $5,017,000; that the floating indebtedness of said county for the year 1879 was $86,146.81; and for the year 1881, exclusive of the bonded indebtedness, was the sum of $312,562.58;

for the year 1881, up to and including the 6th day of September, 1883, the floating indebtedness of said county (exclusive of its bonded indebtedness — then amounting to $55,000—) was $500,000 ; that the amount of indebtedness of said county which the board of county commissioners could alone have funded, and the question of funding which could have been submitted to the lawful voters of said county at the election of 1881, was the sum of $15,000 ; (assuming said bonded indebtedness to be void). Yet the board of county commissioners of said county, wrongfully and unlawfully issued bonds to the amount of $500,000, of which the bonds of plaintiff were a part.

Plaintiff, by replication, specifically denied the material averments of the answer. Upon the trial the following agreed statement of facts was admitted in evidence :

" For the purposes of trial of this action the following facts are hereby stipulated and agreed upon, and the same are to be admitted in evidence, so far as they are relevant, competent and material under the issues joined :

" *First*—It is agreed that the warrants mentioned in the complaint herein, as having been presented by Thomas Corbett for the purpose of exchange into bonds, were in numbers, amounts and dates as stated in said complaint.

" *Second*—That said warrants and the interest thereon were converted into bonds as a part of the bond issue of Lake county, amounting to $500,000 in 1882 ; and said warrants were exchanged for bonds of that issue, which were afterwards and have been duly numbered 185, 186, 187, 188, 189 and 190, 193, 194, 195 and 196, and that the preceding bonds, numbered from 1 to 184 inclusive, had been issued before that time and were for $1,000 each, the whole being a part of said bonded issue of $500,000, all of which were issued practically at the same time, in 1882.

" *Third*—It is agreed that the said Joseph Standley is the owner of said bonds and acquired such ownership before the commencement of this suit, and that no notice as to their invalidity, except implied notice, arising from the face of

said bonds, the statutes, records and proceedings leading up to the issuance of said bonds and in exchange for said warrants, paying a valuable consideration therefor.

" *Fourth*—That at the time and before the commencement of this suit, the said coupons were in default, that is to say, were unpaid.

" *Fifth*—It is agreed that the assessed valuation for Lake county for the years 1877 and 1878 was as stated in the complaint when completed.

" *Sixth*—That the assessed value of said Lake county for the years 1879, 1880, 1881, 1882 and 1883 was as stated in the answer when completed.

" *Seventh*—As no statement is contained in the pleading as to the amount of indebtedness during the years 1878 or 1879, it is agreed that the amount shown by the books kept by the county clerk of said county may be used in evidence for the purpose of showing such amounts.

" *Eighth*—That as to the semi-annual statement of indebtedness, said books may be used for the purpose of showing amounts, but not for the purpose of showing any publication of such amounts.

" *Ninth*—Either side may object to the competency, materiality or relevancy of the above facts, or any of them, and may introduce other testimony to support the issues, in addition to the facts above mentioned."

Plaintiff introduced in evidence certain record entries from the journal of the county commissioners of Lake county for the year 1879, from which it appeared that on April 25, 1879, the bid of George E. King for the iron work on the county jail was accepted, for the sum of $10,000. On May 3, 1879, the bid of A. E. Jones, for the construction of buildings was accepted, for the sum of $6,250. On October 9, 1879, warrants were ordered to be drawn on the county fund for the following amounts:

| | |
|---|---:|
| George E. King, jail, | $   500 |
| "       "      "      " | 700 |
| "       "      "      " | 650 |
| "       "      "      " | 1,413 |

On September 1, 1879, on motion George E. King was allowed the sum of $2,500, in part payment for the county jail, and warrant ordered drawn for the same. On July 8, 1879, George E. King and A. E. Jones were ordered to proceed with the work for the construction of the jail.

Plaintiff also introduced in evidence the tax levy for the fiscal year 1879, being on pages 80 and 81 of said record; and page 47 of the record, dated July 23, 1879, showing various changes and corrections in the assessed valuation, made by the board of equalization. The defendants then introduced the following evidence:

"Pages 8, 9, 10 and 11 of the bond register of Lake county, showed a registry of bonds Nos. 67 to 129, inclusive, dated July 31, 1880. Also bonds numbered 55 to 56 inclusive, dated December 30, 1879, constituting a total issue of bonds in the sum of $50,000."

The defendant then offered in evidence from the bond register, bonds, series A, B and C, funding bonds of Lake county, aggregating $500,000 and numbered from 1 to 710, showing the parties to whom the bonds were issued; the assessment roll of Lake county for the year 1879, certified to by the assessor on July 18, 1879, and showing the total valuation of property in the county for that year $3,485,087; also a certified copy of the official abstract of the assessment made by the clerk and recorder of Lake county for 1879, bearing date of August 18, 1879, showing the value of assessed property for that year to be $3,485,087.

It was admitted by counsel for plaintiff that on the second day of October, 1879, the indebtedness of Lake county amounted to $56,966.47; and the register of county orders also showed that on August 11, the debt was $45,984.97; on September 9, it was $55,020.72; on January 1, 1880, it was, exclusive of road warrants, $95,891.63; that for the year 1880 the indebtedness, exclusive of the bonded indebtedness, amounted to $312,586.82. Counsel for plaintiff admitted that the debt up to December, 1879, was $86,146.81.

The cause was tried to the court; findings in favor of

plaintiff; motion for new trial overruled, and judgment ren-
dered for the sum of $4,800. The county brings the case
here on appeal.

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for appel-
lant.

Messrs. TELLER, ORAHOOD & MORGAN, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

Numerous errors are specified, but they present but two
important questions, upon the solution of which the right of
plaintiff to maintain this action depends, to wit: whether
the original warrants for which the bonds in suit were issued
and exchanged were valid and enforceable obligations against
the county; and if so, can a recovery be had on these par-
ticular bonds, notwithstanding the entire issue is not valid;
that is to say, some of the same series being invalid? And
can such recovery be had in an action at law?

It is broadly asserted by counsel for appellant that the
entire series of bonds, of which plaintiff's bonds are a part,
has been held absolutely void by this court in *People v. May*,
9 Colo. 404, and by the Supreme Court of the United States
in *Lake County v. Graham*, 130 U. S. 674, and *Lake County
v. Rollins*, id. 662; and that these cases decide every propo-
sition involved in this case, and are conclusive upon all
questions at issue herein. In making this assertion, coun-
sel evidently overlooked the matters in issue in those cases,
and misconceived the purport of those decisions. In the *May*
and *Rollins* cases the court had under consideration the
validity of certain warrants issued for ordinary expenses of
the county, not being obligations voluntarily incurred and
admitted to have been issued after the constitutional limita-
tion as to debt had been reached. The question at issue,
therefore, was whether such obligations constituted an in-
debtedness within the constitutional limitation, or whether

the limitation applied only to debts voluntarily incurred; and it was held that compulsory, as well as voluntary, obligations were within the inhibition, and that on the admitted facts the warrants there in controversy were void.

While it is true that in the *Graham* case certain bonds of the same series as those now under consideration were held invalid, yet that decision was based upon an agreed statement of facts very different from those presented by the pleadings and evidence in this case. From this statement, it appeared that the claimed indebtedness funded by the bonds sued on therein, was incurred after the limitation prescribed by the constitution had been reached and exceeded by the county. At page 676 the court say:

"There is also in the record an agreement between the parties that if section six of article eleven of the constitution of the State of Colorado be construed to be a limitation upon the power of the defendant county to contract any and all indebtedness, including all such as that sued upon in this action, then it is admitted that the claimed indebtedness sued on herein was incurred after the limitation prescribed by said constitution had been reached and exceeded by the said defendant, the county of Lake, and in the event of such a construction by the Circuit Court, or the Supreme Court of the United States, then and in that case, and for the purposes of the action, it is also admitted that the defendant is entitled to judgment thereon, unless the defendant is estopped from making such defense by the recitals contained on the face of the bonds and coupons sued on in this action.

"In the case of *Commissioners of Lake County v. Rollins, ante*, 662, we have set forth said section six, and have decided that it does impose 'a limitation upon the power of the defendant county to contract any and all indebtedness.' That decision disposes of the first condition in the agreement recited above. It only remains to decide whether the county is estopped from making such defense by the recitals contained on the face of such bonds and coupons."

And after setting forth a copy of the bonds and coupons,

and the section of the statute under which the bonds were issued, the court further say :

"The recitals of the bonds were merely to the effect that the issue was 'under, and by virtue of, and in full compliance with,' the statute; 'that all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond;' and that the issuing was 'authorized by a vote of the majority of the duly qualified electors,' etc.; no express reference being made to the constitution, nor any statement made that the constitutional requirements had been observed. There is, therefore, no estoppel as to the constitutional question, because there is no recital in regard to it."

It is manifest that this decision settles the invalidity only of such of the bonds as were issued to fund warrants evidencing an indebtedness, whether voluntarily or involuntarily incurred, beyond or in excess of the constitutional limitation; and does not in any way pass upon the validity or invalidity of those issued and exchanged for warrants representing an indebtedness within such limitation. Nor can it be inferred, from the reasoning of the court, that because a part of the series is invalid, for the reasons stated in that opinion, the whole issue is void. While it is true that when an issue of bonds is based upon an indivisible contract which creates an indebtedness in excess of the constitutional limitation, the whole series is void, for the reasons stated in *Hedges v. Dixon County*, 150 U. S. 182, and kindred cases, yet it is readily observable that the same reasons do not exist in case of funding bonds. Hence the rule announced in those cases is not applicable to this class of obligations. The issuance of a funding bond in exchange for valid warrants, is in no sense the creation of a debt. It is but the substitution of new evidence for a preëxisting debt. It changes the form, but does not increase the indebtedness. *Opinion of the Justices*, 81 Me. 602; *Hotchkiss v. Marion*, 12 Mont. 218; *Com. Marion County v. Com. Harvey County*, 26 Kansas, 181; *Blanton v. Com. McDowell County*, 101 N. C. 532; *Miller v. School Dis-*

*trict*, 39 Pac. Rep. (Wyo.) 879; *City of Poughkeepsie v. Quintard*, 136 N. Y. 275; *Sioux City v. Weare*, 59 Ia. 95, *Los Angeles v. Teed*, 112 Cal. 319; *Powell v. City of Madison*, 107 Ind. 106.

The funding act of 1881 authorized the issuance of bonds in exchange, at par, for the warrants of the county. When, in compliance with its provisions, the county issued a bond in exchange for outstanding valid warrants, its validity could in no wise be affected by the fact that other bonds in the same series, issued in exchange for invalid warrants, were unauthorized and void. The validity of each bond, therefore, must be tested by the character of the indebtedness for which it is exchanged. It is an independent contract, and when issued for preëxisting indebtedness, it becomes a valid enforceable obligation against the county. *Francis v. Howard County*, 50 Fed. Rep. 44; *Francis v. Howard County*, 54 Fed. Rep. 487; *Bank v. City of Terrell*, 78 Tex. 450: *Daviess County v. Dickenson*, 117 U. S. 657; *Ætna Life Ins. Co. v. Lyons County*, 44 Fed. Rep. 329; *McPherson v· Foster*, 43 Ia. 48; *S. C. & S. P. R. Co. v. Osceola County*, 52 Ia. 26; *Stockdale v. Wayland School District*, 47 Mich. 226; *Catron v. Lafayette County*, 106 Mo. 659.

*McPherson v. Foster*, *supra*, was a suit to restrain the county treasurer from collecting taxes for the payment of certain bonds and interest thereon, upon the ground that the bonds were illegal because issued in excess of the constitutional limit. *Inter alia*, the court say:

"As we have seen, the constitutional inhibition operates upon the indebtedness, not upon the form of the debt. The district may become indebted to the amount of $2,057.50 by bond. If the debt exceeds that amount, it is void as to the excess, because of the inhibition upon the power of the district to exceed the limit, and the bonds as to the same excess are void because of the non-existence of a valid debt therefor. But this restriction does not extend to the sum of $2,057.50 for which the district had power to issue its bonds. That sum is a valid debt. The bonds to that extent are valid. It

is no unusual thing for instruments of this character to be partly valid and partly invalid. So far as they secure a lawful debt they are valid. So far as the debt is unlawful, they are invalid."

The same rule is announced in the other cases; and we find no case that questions its correctness. We understand counsel for appellant concedes this to be the doctrine of these decisions, but they insist that the supreme court of Iowa, in a later case, has substantially reversed its earlier ruling; and that the supreme court of the United States, in the case of *Doon Township v. Cummins*, 142 U. S. 366, has expressly reversed the circuit court upon the same proposition. We do not so understand the decisions in those cases. In the *Doon Township* case, bonds to the amount of $20,000 were issued, while the constitutional limit of indebtedness was $6,551.90; and although funding bonds, they were to be sold and the proceeds used to discharge an indebtedness, part of which was valid and part invalid. They were sold, and but a small portion of the proceeds properly applied. Judgment was rendered in favor of plaintiff in the court below, and on appeal to the supreme court this judgment was reversed by a divided court, solely upon the ground that the bonds were sold, and not exchanged for the outstanding obligations. Mr. Justice Gray, speaking for the majority of the court, says:

"There is a wide difference in the two alternatives, which this statute undertakes to authorize. The second alternative, of exchanging bonds issued under the statute for outstanding bonds, by which the new bonds, as soon as issued to the holders of the old ones, would be a substitute for and an extinguishment of them, so that the aggregate outstanding indebtedness of the corporation would not be increased, might be consistent with the constitution. But under the first alternative, by which the treasurer is authorized to sell the new bonds and to apply the proceeds of the sale to the payment of the outstanding ones, it is evident that if (as in the case at bar) new bonds are issued without a cancellation or surrender of the old ones, the aggregate debt outstanding,

and on which the corporation is liable to be sued, is at once and necessarily increased."

There is no intimation in this opinion that the supreme court disapproved the reasoning of Judge Shiras, so far as it upheld the validity of funding bonds issued in exchange for an existing and enforceable debt, but substantially approved it. In the case of *Anderson v. Orient Fire Ins. Co.*, 88 Ia. 579, the bonds in question were not refunding bonds, and were issued at a time when the county was indebted far in excess of the constitutional limit. These bonds were sold, and the proceeds were used in part to pay outstanding bonds; and the court, after quoting from *Doon Township v. Cummins*, say:

" The opinion in that case contains some reasoning as to the application of the proceeds of the sale of the bonds, and the consequence to result from a failure of the officers to do their duty in that respect, which we do not find it necessary to approve or disapprove, because in this case the situation is such that there is no pretense of knowing, or being able from the record to know, that any part of the proceeds of the bonds in question, that is, those affected by the judgment in this case, were applied, or intended to be applied, to any legal indebtedness of the county. * * * Under the facts as they appear in this case the bonds are to be treated as void."

*Shaw v. Ind. School District*, 62 Fed. Rep. 911, also cited by counsel for appellant, was a case where refunding bonds were issued in excess of the constitutional limitation, and those sued upon had been issued to take up an invalid indebtedness. The court say:

" If it appeared that the bonds bought by the plaintiff were in fact used to retire or refund a pre-existing, enforceable indebtedness of the district, then it might be true that they would be valid, even though they exceeded the limitation. From the evidence it appears that they were issued to C. W. Rollins in exchange for other bonds held by him, but it does not appear that the latter bonds were valid in his hands, but, on the contrary, it appears that they were part of a fraudulent series."

Upon a careful reading of these cases, we think it will be seen that we are fully sustained in the view we have expressed; and that the rule therein announced in no way contravenes the doctrine laid down in the numerous cases we have referred to, viz : that a part of a series of funding bonds issued in exchange for an outstanding indebtedness, may be valid, notwithstanding others of the series are invalid.

This brings us to a consideration of the first proposition : were the warrants for which the bonds in suit were exchanged, valid obligations against the county ?  The facts disclosed by the record, that are material on this branch of the inquiry, are as follows :

On the 8th day of February, 1879, the present county of Lake was created out of a part of the old county of Lake, which originally included, in addition thereto, the territory now comprising the county of Chaffee.  The old county had an assessed valuation of $603,858.92 for the year 1878 ; and the assessed valuation of the present county for the year 1879, when completed, was $3,485,628.  It also appears that the floating indebtedness of the county was, on the 11th day of August, 1879, $45,984.74 ; September 9, $55,020.22 ; October 2, $56,966.47 ; and on the 1st day of December, $86,146.81.

The bonds sued on are a part of a series of $500,000 issued by the county under and in pursuance of the funding act of 1881, to fund its floating indebtedness, evidenced by outstanding warrants.  These particular bonds were exchanged for warrants, the earliest of which was dated July 17, 1879, and the latest October 9, 1879, which are alleged to have been issued for debts contracted April 25, and May 3, 1879, to the amount of $5,763, and for other indebtedness contracted before the assessed valuation of the county reached $1,000,000.  The limitation prescribed by section 6, art. 11 of the constitution, in force at the time this indebtedness was incurred, applied only to counties having an assessed valuation of one million dollars or more ; and since the county of Lake, organized February 8, 1879, had no assessed

valuation prior to 1879, unless we accept the valuation made by the old county upon the property included within the new county, which was less than one million dollars, and its assessed valuation in 1879 when completed amounted to upwards of three million dollars, it becomes necessary to determine which assessment measured its power to incur indebtedness at the time the foregoing debts were contracted. Counsel have ably and exhaustively discussed this question, and with much force have presented persuasive reasons in support of their respective views; counsel for appellant insisting that the assessment roll as certified by the assessor on the 25th day of June, 1879, should control; while counsel for appellee claim that the assessment of the preceding year must govern during the fiscal year ending November 30, 1879.

While the reasons advanced in support of the latter view have much force, we think the weight of authority is to the effect that the assessment of the preceding year fixes the valuation that is to be taken as the criterion, until the succeeding assessment is revised by the state board of equalization, and the necessary changes and corrections made and certified to the clerks of the respective counties; that when so completed, it supersedes the preceding assessment, and furnishes the valuation that must determine the power of the county to contract future indebtedness. *Buchanan v. City of Litchfield*, 102 U. S. 278; *Childs v. City of Anacortes*, 5 Wash. 452; *Seymour v. City of Tacoma*, 6 Wash. 427; *Culbertson v. City of Fulton*, 127 Ill. 30; *Johnston v. County of Becker*, 27 Minn. 64.

By the provisions of the statute then in force, the assessor was required to complete and deliver the assessment roll to the county clerk on or before the 25th day of June, and the state board of equalization was required to meet at the capitol of the state on the second Monday of August in each year, to equalize the rate of assessment in the different counties; and the auditor to transmit on or before the first day of September to the clerk of each county, a statement of

the changes and corrections made by the board in the assessment. Accepting then, the first day of September as the time when the assessment of 1879 was completed and became the test by which the power to incur further indebtedness was limited, the validity of the warrants in question would not be affected; since it in no way appears from the evidence that any of the indebtedness for which they were exchanged was incurred at a subsequent date. The presumption being, in the absence of proof to the contrary, that the indebtedness was valid, and the burden resting upon the county to show its invalidity if it would evade liability on the warrants, we must conclude from aught that appears in the record before us, that the warrants for which the bonds in suit were exchanged, constituted an existing and valid indebtedness against the county. *Childs v. City of Anacorte's, supra; County Com. v. Oliver*, 7 Colo. Ct. App. 515; *Austin v. Dist. Tp. of Colony*, 51 Ia. 102; *Mulnix v. Mut. Benefit Life Ins. Co.* 23 Colo. 71; *Ætna Life Ins. Co. v. Lyon County*, 44 Fed. Rep. 329.

In the latter case Judge Shiras says:

"In suits, therefore, upon refunding bonds representing prior indebtedness, it is necessary, in order to sustain the defense of invalidity, to show that the indebtedness merged in and represented by the refunding bonds was itself invalid and non-enforceable, either in whole or in part."

This case, among others, is cited by counsel for appellant in support of their contention that an action at law cannot be maintained upon the bonds themselves, but that all the holders of the series of bonds must unite in a proper proceeding in equity against the county, to determine for what amount the county can be held liable. That was also an action at law on interest coupons of refunding bonds. The issue was largely in excess of the constitutional limitation, but a part of which was valid, and represented judgments and other enforceable debts against the county. The evidence failed to show whether the bonds owned by the plaintiff fell within that category, and it was argued that the

bonds would be valid until the amount needed to refund the enforceable debt had been reached; and that it will be presumed that the bonds were sold in the order of their number. Judge Shiras held that such presumption could not be indulged in under the facts of that case, and said:

"In this action at law between one owner of part of the bonds and the county, it is beyond the power of the court to hear and determine the question of the order in which the series of bonds was sold, or the application of the proceeds realized from the sales thereof, and whether the facts are such that a certain number of the bonds can be held valid at law, or whether it should not be held that each owner of a bond is equitably entitled to demand his share of the total sum which may be adjudged to be collectible from the county." And concluded that in these circumstances a resort must be had to equity to determine that question. The case is clearly distinguishable from the one at bar. The very proof that was lacking there to support a recovery in an action at law, is supplied in this case. This same distinction was made in the case of *Francis v. Howard County, supra,* wherein it was held that when the pleadings and the proof warranted it, a court of law would give judgment in such cases. Judge Maxey, after quoting from the opinion of Judge Shiras in *Ins. Co. v. Lyon County, supra,* and other cases of like purport, sums up as follows:

"This court fully concurs in what is said in the cases cited. But the rulings in those cases were predicated upon the particular facts of each case. While in this suit the court entertains serious doubts as to the propriety of entering judgment in behalf of plaintiff, yet, after giving the question careful consideration, I am impressed with the conviction that such a judgment would be warranted by both the pleadings and proofs; and perceiving no insuperable objection, in a case of this kind, to the rendition of a judgment in a suit at law, my conclusion is that plaintiff should recover the amount found due, with legal interest and costs of suit."

This judgment was affirmed by the Circuit Court of Ap-

peals, 54 Fed. Rep. 487. It seems to us clear, both upon principle and authority, that an action at law may be maintained upon bonds of this character, upon a state of facts such as is disclosed by this record. And although the question of their validity involves an investigation of the validity of the original indebtedness for which they were exchanged, we can perceive no difficulty in making that inquiry in such an action. Nor does it follow, as contended by counsel for appellant, because in the ascertainment of that fact resort must be had to evidence showing the validity of the original warrants, that such evidence constitutes a variance from the allegations of the complaint, in that it shows a right to recover upon the warrants, if at all, and does not support the cause of action based upon the bonds themselves.

It can as well be said that if in an action upon a promissory note the want of consideration be alleged, evidence of the fact that the note was given for a valuable consideration would constitute a variance from the allegations of the complaint, because it tended to show another and an additional cause of action to that predicated upon the note.

The primary question at issue is the validity of the bonds upon which the interest sued for had accrued. Their validity depends upon the consideration received for them. If the consideration was a valid indebtedness, the bonds are valid; otherwise they are void, and the plaintiff may not recover upon either the bonds or the original warrants. On the other hand, if the warrants were valid for which the bonds were substituted, proof of that fact establishes the validity of the bonds, and supports the cause of action set forth in the complaint.

After careful consideration of all the objections urged by counsel for appellant, our conclusion is, that when tested by the principles governing this class of obligations, the particular bonds to which the coupons sued on belong were valid obligations against the county; and a recovery upon the coupons was clearly warranted, under the pleadings and

proof. The judgment of the court below is accordingly affirmed.

*Affirmed.*

### ON REHEARING.

PER CURIAM. A rehearing in this case was allowed because of the important questions involved, and in view of the fact that counsel for appellant were inadvertently prevented from arguing them orally when the case was formerly before us. Briefs have been filed and oral arguments heard; and upon a thorough reconsideration of the questions involved, we are satisfied that our former decision correctly announced the law applicable to the facts as disclosed by the record.

While there is ground for questioning the correctness of our inference that the testimony disclosed that the warrants set out in the complaint covered all of the $5,763 allowed to King in part payment of his jail contract, such conclusion was a very reasonable one in view of the fact that the warrants were issued the same day those allowances were made; and most of them being for an even amount and in such a sum as one who held a large indebtedness against the county would naturally prefer to have the same divided. But, however this may be, under the view we then took, and now take, as to where the burden of proof lies, it does not alter the conclusion that under the stipulated facts and the evidence introduced, the validity of the warrants was unimpeached.

. Counsel now concede that a warrant is *prima facie* evidence of a valid indebtedness, and that the burden of proving it was issued for an illegal indebtedness rests upon the county; but insist that that burden is met by showing that the warrant was issued subsequent to the date when the constitutional limitation had been reached, since the presumption then attaches that the warrant was issued for an indebtedness then contracted, and not for an antecedent debt. That such a presumption cannot be safely indulged

in, is shown by the facts in this case, as it appears that on October 9, 1879, the date of the warrants described, claims were allowed and warrants ordered to issue for an indebtedness that was contracted in May and April preceding.

We think the presumption, that the consideration for which a warrant issues is valid, obtains until it is shown that such consideration is illegal; and if illegal because incurred after a certain date, it devolves upon the county to show that fact. In this view, therefore, it becomes immaterial whether we were technically correct in saying that a major part of the indebtedness for which the warrants were issued was shown by the testimony to have been contracted anterior to the time the constitutional limitation was reached, since it in no way appears from the record that any portion of the indebtedness evidenced by these warrants was incurred at a subsequent date.

In regard to the other particulars wherein the correctness of our former decision is challenged, we see no reason to change our views. All the questions now raised were thoroughly argued in the original briefs, and were considered by us in the light of all the authorities when the case was then before us. Except as modified by changing our finding that the warrants for which the bonds were exchanged " were issued for debts contracted April 25 and May 3, 1879, to the amount of $5,763 " to the statement that they were alleged to have been so issued; and also by withdrawing the further statement that the major part of the indebtedness for which the warrants were issued is shown to have been contracted long anterior to the first of September, our former opinion will be adhered to.