[No. 4129.]

## THE BOARD OF COUNTY COMMISSIONERS OF LAKE COUNTY v. LINN.

1. COUNTY BONDS — PRESUMPTION OF VALIDITY — BURDEN OF PROOF. ·

   In an action upon coupons of county funding bonds issued under
   authority of the act of Feb. 21, 1881 (Mills Ann. Stat. sections 939-944),
   where the defense set up in the answer was that the bonds were invalid
   because the county warrants for which the bonds were exchanged were
   issued in excess of the limit of indebtedness allowed by the constitu-

tion, when plaintiff produced in evidence his coupons and the bonds to which they were attached, regularly and in due form executed by the authorized officers of the county and with the county seal attached, the presumption was that they were valid, and the same presumption attached to the warrants similarly executed and tested which became merged in the bonds, introduced in evidence by the defendant, and the burden was on defendant to show by a fair preponderance of the evidence that the alleged indebtedness which was merged in the bonds was invalid because contracted at a time when the county could not lawfully incur further indebtedness.

2.  COUNTY BONDS—EVIDENCE—BURDEN OF PROOF.

In an action upon county bonds, the fact that the county officers failed to preserve in the public records evidence that the indebtedness on which the bonds were founded was contracted after the constitutional limit had been reached does not absolve the county from the ordinary rules relating to the sufficiency of proof or cast upon plaintiff the burden of showing that the bonds were issued for a valid indebtedness.

3.  COUNTY FUNDING BONDS—ILLEGAL CONSIDERATION.

Merely because an illegal consideration for some one or more of the bonds of a series of funding bonds may have been given is not sufficient to invalidate the entire series, and in an action against a county on such bonds the fact that some illegal consideration may have entered into some or all of the other bonds of the series than those involved does not relieve the defendant of liability thereon unless that taint can be traced to the bonds in question.

4.  COUNTY BONDS—COUPONS—INTEREST.

The rule in this state that compound interest may not be recovered does not apply to unpaid coupons belonging to or cut from municipal bonds.  Interest may be recovered on overdue coupons on county bonds.

*Appeal from the District Court of Fremont County*

This is an action to recover on coupons of municipal bonds issued by Lake County, Colorado, on January 2, 1882, under authority conferred by an act of the general assembly entitled "An act to enable the several counties of the state to fund their floating indebtedness," approved February 21, 1881.  1 Mills Ann. Stat. §§ 939 to 944.  The bonds recite upon their face that they are part of an issue of funding

bonds aggregating $500,000, and were made payable to different persons. Plaintiff did not receive them direct from the county, but bought them in the open market, and is a *bone fide* purchaser, before maturity, for value, without notice of defects therein, if any, other than that furnished to the public by the constitution and laws of the state. There is no specific recital that the board of county commissioners in issuing them complied with section 6, article 11, of the state constitution prescribing the limitation of county indebtedness, in which there is a proviso to the effect that this limitation shall not apply to counties having a valuation of less than one million dollars. There is a recital, however, that they were issued "under and by virtue of, and in full compliance. with," the act of the general assembly mentioned, and that their issuance was authorized by a vote of a majority of the duly qualified electors of the county voting on the question at the general election held on November 8, 1881, and that "all the provisions and requirements of said act have been fully complied with by the proper officers in the issuing of this bond."

The defense set up in the answer is that these bonds were issued in exchange for county warrants which evidenced debts incurred after Lake county had reached the limit of indebtedness allowed by the foregoing provision of the constitution. It is conceded that the assessed valuation of the taxable property of the county did not reach the sum of one million dollars until the first day of September, 1879, and it is also conceded that at no time after that date was it sufficient to authorize the creation of an indebtedness of $500,000. The funding bonds amounting to $500,000 were exchanged for county warrants. some of which evidenced debts of the

county created before, and some debts created after, September 1, 1879.   It is, then, admitted that some of the original indebtedness now funded and merged in this issue of bonds constituted a valid debt of the county, and that the bonds in suit are a part of an issue of $50,000 emitted on one and the same day. As to the foregoing facts there is substantially no controversy.

After appellee introduced in evidence the coupons and the bonds from which they were taken, the appellant undertook to discharge the burden of proving that these bonds were issued in exchange for county warrants into which had been merged certain alleged indebtedness of the county contracted subsequent to the time when its debt exceeded the constitutional limitation, and which for that reason, were void.   To sustain the defense, the county offered in evidence the certificate of the county treasurer that the assessed valuation of Lake county in the year 1879 was $3,485,628, and a similar certificate of the clerk and recorder that for the year 1880 the assessed valuation was $11,025,793, and for 1881, $16,423,-463, subsequently abated in accordance with the decision of the supreme court to the amount of $5,017,-000.

The bond register of the county was then offered in evidence, which showed that prior to July 31, 1880, the county of Lake had issued $50,000 in public building bonds, such issue being authorized by a vote of the people.   The county also offered certain semi-annual statements, certified by the county clerk, showing the indebtedness of Lake county on the first of January, 1880, and for the six months immediately preceding that date, and similar certified statements for the periods ending July 1, 1880, Jan-

29

uary 1, 1881, July 1, 1881, and December 31, 1881, and affidavits of newspaper proprietors that such statements had been published as the law required. This was followed by a statement of the receipt and expenditures of the county from its organization to January 1, 1880, showing a warrant indebtedness outstanding on the latter date, amounting to $84,296.28. Similar certified statements of receipts and expenditures and indebtedness were introduced declaring that on July 1, 1880 the indebtedness amounted to $198,394.-57, on January 1, 1881, $293,063.20; on July 1, 1881, $436,-099.95; and on December 31, 1881, $536,806.70. There was offered in evidence a list of every warrant issued by Lake county beginning with warrant No. 1, of date March 1, 1879, and ending with No. 7663, bearing date September 5, 1881, which included, as was claimed, all of the warrants that were merged in the bonds involved in this action, and in connection therewith all the vouchers that remained in the archives of the county for which such warrants were issued, and the records of the meetings of the boards of county commissioners at which the bills were presented and allowed and warrants therefor drawn.

According to the lists it appears that the total outstanding warrants issued by Lake county and purporting to represent its indebtedness consisted of the following sums on the following dates (which, it will be observed, do not exactly harmonize with the amounts on the corresponding dates as exhibited by the semi-annual statements heretofore referred to): June 30, 1879, $33,432.98; October 9, 1879, $58,-382.46; December 31, 1879, $86,146.81; June 30, 1880, $209,897.55; December 31, 1880, $362,683.23. According to this statement the actual indebtedness incurred by the county prior to September 1, 1879, was less than $50,000. The amount of warrants out-

standing October 9, 1879, and the amount of war-
rants issued during that year were nearly all for bills
presented prior to September, 1879. The date and
amount of the allowance of the various bills par-
tially, but not wholly, correspond to the date and
amount of the warrants introduced in evidence.
There was also introduced a copy of the register of
road warrants similar to the ordinary warrants al-
ready referred to.

By the testimony of Joseph Pearce, who was a
member of the board of county commissioners dur-
ing the times of these various transactions, it was
sought to show that the practice of the board was at
each meeting to issue warrants for the current ap-
proved bills of the preceding month. This for the
purpose of showing aproximately the date of incur-
ring the indebtedness for which the various warrants
herein involved were drawn. He testified that his
refreshed recollection is that it was the custom to al-
low bills monthly, generally at the last meeting of
the month when they were presented, covering the
period of time since the last preceding meeting of the
board. But he says that he has no independent
recollection whatever about the matter; that he can-
not tell the time when such indebtedness accrued;
that he does not know anything about the date when
the work or services were performed for which the
warrants were drawn. With respect to some of the
items it would seem that they were for services per-
formed or articles furnished since the last preceding
meeting of the board, but an examination of the list
produced clearly shows that such was not always the
case; and the witness himself testifies that sometimes
the work for which the bill was presented was done
"quite a while" before its presentation.

Upon the foregoing testimony covering substantially everything that was before the court, the findings were in favor of the plaintiff, and a judgment was rendered in his favor for the sum of $18,984.60, of which sum $11,760 was for the principal, and $7,-224.60 the accrued interest upon the same.

Mr. CHARLES CAVENDER and Messrs. THOMAS, BRYANT & LEE for appellant.

Messrs. ROGERS, CUTHBERT & ELLIS and Mr. PIERPONT FULLER for appellee.

CHIEF JUSTICE CAMPBELL (after stating the facts) delivered the opinion of the court.

Two assignments of error are relied upon and argued by counsel for appellant: *first*, as to the correctness of the findings upon the evidence; *second*, the right to enter judgment for overdue interest on coupons attached to county bonds.

1. A number of actions upon this same series of bonds have heretofore been brought and determined in the state and federal courts. In *Lake County v. Standley*, 24 Colo. 1, this court, in an able opinion by Mr. Justice Goddard, in an action upon coupons of the same series of bonds, has declared the substantive law and established the principles by which this case is controlled. It was there said that an issue of county bonds based upon an indivisible contract and in excess of the amount of indebtedness which may be incurred under the constitution is void as to the whole issue; but the validity of any particular bond issued in compliance with the funding act of 1881 in exchange for outstanding valid county warrants is not affected by the fact that other bonds of the same

series were issued in exchange for invalid warrants. That is to say, although a part of the series of funding bonds issued in exchange for an outstanding indebtedness may be invalid, others of the same series may be valid. It was also decided that an issue of funding bonds by a county in exchange for outstanding warrants is not a creation of a new debt, and that when a county seeks to evade liability on the ground that its issue of funding bonds is in excess of the constitutional limit, it must assume the burden of facts showing their invalidity. According to this decision, also, the assessment of the preceding year furnishes the test by which the power of the county to incur indebtedness under the constitutional limit is to be determined. Under this rule September 1, 1879, is the time when the assessment of 1879 was completed, and it became the test by which the power to incur further indebtedness was limited.

By applying the principles of that decision to the case in hand, it is to be observed that when the plaintiff produced his bonds in evidence, regularly and in due form executed by the authorized officers of the county, and with its official seal affixed, the presumption was that they were valid, and when the warrants, similarly executed and attested, which became merged in these bonds were introduced by defendant, the same presumption attached to them. The validity of the bonds and the warrants being presumed, it was incumbent upon defendant to establish by a fair preponderance of the evidence that the alleged indebtedness which was merged in the bonds was invalid because contracted at a time when the county could not lawfully incur further indebtedness.

Before taking up the evidence we call attention to

some of appellee's contentions. One of them is that
the county is estopped to say that the alleged prima-
ry indebtedness was void because of the recital in the
bonds that they were issued "under and by virtue of,
and in full compliance with," the funding act. And
since that act limited the amount of bonds to be is-
sued to the sum of the county indebtedness at a spe-
cified date, and the amount of that indebtedness was
to be determined by the county commissioners and a
certificate made of the same and entered in the rec-
ords of the county, this recital, taken in connection
with the other recitals in the bonds that "all the pro-
visions and requirements of said act have been fully
complied with by the proper officers in the issuing of
this bond," was, and is, on the principle that things
which are equal to the same thing are equal to each
other, necessarily a certificate that the bonds had
been issued in compliance with, and not in violation
of, the constitutional, as well as the statutory, limita-
tion. To this proposition citation is made to *The
Board of County Commrs. v. Sutliff,* 97 Fed. Rep. 270,
276, and authorities there collated; *Hughes County v.
Livingston,* 104 Fed. Rep. 306; *City of Pierre v. Duns-
comb,* 106 Fed. Rep. 611. There are decisions by the
supreme court of the United States, like *Sutliff v.
Lake County Commissioners,* 147 U. S. 230, to the effect
that a recital in a county bond that all the provisions
of the statute are complied with does not estop the
county, whose defense to a suit on the bond is that
it was issued in violation of the constitution, to prove
that constitutional defect. The United States circuit
court of appeals in the cases just referred to has
drawn a distinction (at least has tried to do so) be-
tween the Sutliff case and the ones in which they sus-
tained the plea of estoppel. We do not find it neces-

sary to decide this point now, though we cannot pass it by without observing that the reasoning of the circuit court of appeals is persuasive, as an examination of its opinions will disclose. But the trial court permitted appellee, notwithstanding this recital, to introduce evidence touching the constitutionality of the alleged debt of the county.

Objection was made by appellee to the introduction of evidence of what the records of the county were supposed to show respecting its indebtedness. He contends that while in the case of *Sutliff v. Lake County Commrs.*, 147 U. S. 230, a purchaser of bonds was charged with notice of what the public records might show as to the public indebtedness, this was because the statute itself, under which the bonds were issued, expressly required the facts which constituted the statutory or constitutional conditions precedent to be made a matter of public record. But the case at bar, as were *Lake County v. Graham*, 130 U. S. 674, 682, and *Chaffee County v. Potter*, 142 U. S. 355, 363, is of another class where the bonds were issued in pursuance of an act which committed to the officers who issued them the determination whether the facts existed which constituted the constitutional and statutory conditions precedent, and did not require those facts to be made matter of public record. Therefore, this evidence of the public record was inadmissible, for a purchaser of bonds was not charged with notice of, or required at his peril to consult it. He might, on the contrary, rest content with a recital in the bond itself that the officers to whom the act committed the power to determine the conditions precedent had properly discharged their duties. A further objection was that no such public record was made of this indebtedness as to charge purchasers

witI notice. The district court overruled all objections and heard the evidence.

With the exception of the oral testimony of the witness Pearce the character of evidence by which the defendant sought to discharge its burden was precisely the same as that introduced by the same defendant in *Board of Commrs. v. Keene, Five-cents Savings Bank*, 108 Fed. Rep. 505. The action there was upon coupons clipped from other bonds of the same series, and in that case, in an opinion by Mr. Justice Sanborn, it was held that the evidence offered to which we have just adverted was improperly received by the trial court. Caldwell, circuit judge, dissented, holding that such evidence at least tended to prove the unconstitutionality of the debt and should have gone to the jury, its weight to be passed on by that body. Here, however, the trial court admitted the evidence there rejected, and if this evidence does not sustain the burden imposed on defendant it is not necessary for us to inquire if its rulings admitting the evidence were erroneous.

The case at bar is not stronger for defendant by the testimony of the witness Pearce, than was the case as made for the county in defending the action of the Keene Savings Bank, *supra*. It is uncertain, and itself shows that the custom which it was sought thereby to prove was subject to many exceptions. The witness himself did not pretend to have any independent recollection of the method of procedure and so, very little, if any, weight should be attached to his uncertain recollection. At all events, it is as favorable to the view of plaintiff as to that of defendant.

The question, then, upon the main issue is whether the evidence before the court established the fact

that the primary indebtedness of the county, or any part thereof which is now represented by the bonds involved in this case, was illegal and void as being beyond the power of the county to contract within the limits prescribed by the constitution. In argument counsel admit that the evidence on this issue is not the best evidence or conclusive, but it is the best that can be produced after the lapse of nearly twenty years. We think both propositions are true. That it is the only evidence within control of the county is its misfortune, not the fault of plaintiff. But because it is the only evidence is no reason why we should hold it sufficient to establish the invalidity of the debt. If its officers had gathered the necessary data and embodied the same in its public records and they had been properly kept and preserved, the county might have furnished conclusive evidence, if such was the fact, that the indebtedness on which the bonds in suit were founded was contracted after the constitutional limit had been exceeded. The failure in this respect does not absolve it from the ordinary rules which relate to the sufficiency of proof, or cast the burden upon its adversary who is not responsible for the county's omission to preserve the evidence, or for its loss or destruction, if such occurred.

In the answer the county alleges that it is impossible to trace any particular warrant, and of course any particular debt, into any particular bond involved in this suit. Merely because some illegal consideration for some one or more of the bonds of this series may have been given, is not sufficient to invalidate the entire series; and though some illegal consideration may have entered into all, or some, of the other bonds of the series than those herein involved, still unless that taint can be traced into the bonds in ques-

tion, the defendant may not escape liability thereon.

As already said, the defendant in its answer avers that it is impossible to trace any particular warrant into any particular bond in suit, and the evidence by which it sought to do this very thing, in our judgment signally fails to establish the identity now asserted. Indeed, we think upon that allegation of the answer, the court, had it been requested to do so, might properly have ordered judgment on the pleadings to be entered in favor of the plaintiff. That, however, is not now important, for the parties submitted the case upon evidence which, in the judgment of the trial court, was not sufficient to establish the alleged invalidity of the debt.

Possibly it may be true that, as counsel for defendant assert, the whole, or part, of the series of bonds is invalid, but if so, it is the misfortune of defendant, or the result of the neglect of its own officers, that it has not been able to establish that fact in court. Under the doctrine of the Standley case and the case of the Keene Five-cents Savings Bank, *supra*, and *People v. May*, 9 Colo. 404, there were two classes of valid warrants which the county might have issued, and which it might have had outstanding on January 2, 1882, when these bonds were exchanged for warrants: First, those issued in exchange for debts contracted prior to September, 1879; and, second, those issued after that date for the current expenses of the county for each year against taxes levied to pay those current expenses. The defendant, confessedly, except by mere inference not founded upon clear or satisfactory evidence, has failed to show that the bonds in suit here were not, or might not have been, exchanged for one or both of those classes of warrants. In any event, after a careful examination of

the evidence we cannot say that the findings of the trial court are not sustained.

2:   It has been decided by this court that interest on interest, or compound interest, may not be recovered.   *Filmore v. Reithman,* 6 Colo. 120; *Hochmark v. Richler,* 16 Colo. 263; *Denver B. & M. Co. v. McAllister,* 6 Colo. 261.   In Illinois the same ruling has been made.   But in that state, from which our interest statute was taken, it has been held that interest may be recovered upon unpaid coupons belonging to, or cut from, a municipal bond, such as the coupons upon which this action is founded.   The decisions of the supreme court of the United States are to the same effect, and we think the court below was justified under section 2252 Mills Ann. Stat. in awarding interest   The following authorities sustain this ruling:

*Walnut v. Wade,* 103 U. S. 683; *Gelpcke v. City of Dubuque,* 1. Wall. 175; *Hollingsworth v. City of Detroit,* 3 McLean 472; *Aurora City v. West,* 7 Wall. 82; *Harper et al. v. Ely et al.,* 70 Ill. 581; *Humphreys v. Morton et al.,* 100 Ill. 592; *Smith v. Luse,* 30 Ill. App. 37; *Benneson v. Savage,* 130 Ill. 352; *Bowman v. Neely,* 32 Ill. App. 356; *Ibid,* 46 Ill. App. 139; *Cook v. Ills. Trust & Sav. Bank,* 68 Ill. App. 478; *Hughes County v. Livingston,* 104 Fed. Rep. 306, 322.

Perceiving no error in the judgment, it is affirmed.

*Affirmed.*

MR. JUSTICE GABBERT, concurring.

I concur in the conclusion announced by the chief justice, that the judgment should be affirmed, and will briefly state the reasons why, in my opinion, the case is distinguishable from the previous decisions of

this court on the subject of interest on interest, and, likewise, distinguishable from cases cited from Illinois which hold that interest is not recoverable on coupons issued by a municipal corporation.

In the Colorado cases referred to in the opinions of the chief justice and Mr. Justice Steele, it was determined that interest on interest was not recoverable where the contract to pay such interest was a part of the one to pay the principal, and not separate or severable from it. The decisions in Illinois are to the same effect. In that state, however, it is held that interest coupons attached to commercial paper bear the legal rate of interest after maturity, because by consent and usage, such coupons are recognized as express promises to pay a definite sum at a specified time. The decisions in Illinois on the subject of the liability of municipal corporations to pay interest beginning with *County of Madison v. Bartlett*, I Scammon 67, appear to be based upon the ground that such bodies are exempted from the payment of interest because they are not named in the statute on the subject, and therefore, the inference arises that it was not the intention of the law that they should be required to pay interest on their indebtedness. So far as I have been able to ascertain, Illinois has no provision corresponding to § 2254 Mills Ann. Stat., which provides that county orders, warrants, and other like evidences and certificates of indebtedness, shall bear interest from date of presentment for payment, if not paid. The law permits counties to fund their floating indebtedness thus evidenced. In so doing the accrued interest is made part of the principal. The evident purpose of the statute is to place counties practically upon the same plane as individuals, with respect to the payment of interest

upon their written evidences of indebtedness, with a limitation as to rate; so that the ground upon which the decisions in Illinois are based exempting counties from the operation of the interest statute, does not exist in this state. On the contrary, in the light of our statute, there is ample reason for holding counties liable for interest on interest coupons the same as individuals. I understand that in the federal courts in suits upon the same series of bonds, as in the case at bar, it has uniformly been held that the county was liable for interest upon the coupons. From an examination of the authorities cited in the opinion of the chief justice, it will be found that the supreme court of the United States holds municipalities liable for interest on coupons after default, for the same reason that individuals are held, i. e., because by universal usage and consent, they have all the qualities of commercial paper in this respect. It will also be noticed that notwithstanding the decisions of the supreme court of Illinois, the supreme court of the United States holds that interest coupons of bonds issued by municipalities in Illinois bear interest after due. Where there is a conflict of authority on a given proposition, it is certainly safe to follow the decisions of the highest tribunal in the land. There is nothing in the act under which the bonds were issued, from which the coupons were taken, nor is there any law of this state, which prohibits the allowance of interest on that kind of commercial paper.

Mr. JUSTICE STEELE dissenting.

I am willing to accept the conclusion of the court that the principles announced in the case of *Lake*

*County v. Standley,* 24 Colo. 1, must control in the decision of this case, and that the defendant having failed to establish, in accordance with that decision, the invalidity of the bonds in question, the judgment in that respect must be affirmed; but I cannot agree with the portion of the decision which allows interest upon the coupons sued upon.

These coupons have not been separately negotiated, nor do they contain any stipulation for the payment of interest if not paid when due. At this time, if the judgment is permitted to stand, there is due upon it something over $23,000, more than half of which is interest upon interest.

It is stated in the opinion that while this court has declared that interest upon interest is not recoverable, the same ruling has been made in Illinois; and that in Illinois "it has been held that interest may be recovered upon unpaid coupons belonging to, or cut from, a municipal bond, such as the coupons upon which this action is founded." I have been unable to find any such decision in Illinois. In the case of *City of Pekin v. Reynolds,* 31 Ill. 529, a suit upon bonds issued by the city of Pekin, the supreme court of Illinois held expressly that the city was not liable to pay interest upon its coupons, not only because no proper demand had been made, but also because cities and towns, not being mentioned in the statute regulating interest, are not within its provisions so as to be required to pay interest on their indebtedness in the absence of an express agreement to pay such interest. In *Town of Mt. Morris v. Williams,* 38 Ill. App. 401, a suit upon bonds with interest coupons attached, the court says: "But the court erred in allowing interest on the coupons after due. This precise question was considered and determined in *The City*

*of Pekin v. Reynolds*, 31 Ill. 529.  It was held in this case that municipal corporations were not liable for interest except upon an express provision to pay it, and that our statute relating to interest does not apply to municipal corporations, so as to make their debts draw interest, except upon an express promise to pay it.  It will thus be seen that the liability which attaches to private individuals to pay six per cent upon matured debts and obligations does not apply to municipal corporations.  For the error in computing interest on the matured coupons the judgment is reversed and cause remanded."

So far as I can find, *The City of Pekin v. Reynolds* has never been doubted or modified, but, as to the second ground of the decision, has been frequently cited and followed in analogous cases; as the following quotation from *City of Danville v. Danville Water Company*, 180 Ill. 235, will perhaps sufficiently show:

"It was error to include an award of interest in the judgment.  'A municipal corporation, under the uniform ruling of this court, is not chargable with interest on claims against it, in the absence of express agreement therefor, the only exception being where money is wrongfully obtained and illegally withheld by it.—See *Vider v. City of Chicago*, 164 Ill. 354, citing *City of Pekin v. Reynolds*, 31 Ill. 529, and *City of Chicago v. People*, 56 Ill. 327.' (*City of Peoria v· Construction Co.* 169 Ill. 36.) "

As to interest coupons not issued by a municipal corporation, the rule in Illinois is, as stated in the opinion, that interest is recoverable upon them. The rule is clearly stated in *Drury v. Wolfe*, 134 Ill. 294, a case which, in its facts, resembles *Hochmark v. Richler*, 16 Colo. 263.  In *Drury v. Wolfe*, the court says: "The general rule recognized

by this court is, parties cannot be bound by any contract made before interest is due, for the payment of compound interest. (*Leonard v. Villars, Admr.* 23 Ill. 377; *First National Bank of Galesburg v. Davis*, 108 Ill. 633; *Harris v. Bressler*, 119 Ill. 467; *Peddicord v. Connard*, 85 Ill., 102; *Leonard v. Patton*, 106 Ill. 99.) But after interest is due, it may, by agreement then made, be added to the principal, and made to thereafter bear interest. *Thayer v. Willmington Star Mining Co. et al.* 105 Ill. 540; *Gilmore et al. v. Bissell*, 124 Ill. 488; *McGovern v. Union Mutual Life Ins. Co.* 109 Ill. 151; *Van Benschooten v. Lawson*, 6 Johns, Ch. 314.

"There is, perhaps, an exception to the rule as first above stated, in the case of interest coupons annexed to commercial paper. Such coupons bear interest. (*Benneson et. al. v. Savage et al.* 130 Ill. 353, and cases there cited.) But in such case, interest is not compounded indefinitely. Interest is simply payable upon the amount of the face of the coupon, and that the coupon bears interest is solely because of the character given it by commercial usage. *Aurora v. West.* 7 Wall. 105; *Mercer v. Hackett*, 1 Wall. 83; *Meyer v. Muscatine*, 1 Wall. 384.

"There is, therefore, no authority in this for holding that interest may be compounded indefinitely, or at all, in cases where the payment of interest is not secured by some negotiable instrument independent of the instrument whereby the original indebtedness is promised to be paid."

I quite agree with the reasoning of the court in one of the cases cited in the opinion (*Bowman v. Neely*, 32 Ill. App. 356): "We are inclined to think there is no substantial difference in principle, between a note like the one in this case, where the contract to pay a certain sum as interest annually is contained in

the same paper with the contract to pay the principal sum, and one where the interest is secured by a separate instrument or coupon. In either case it is all one contract, executed at one time, and we think should be construed the same whether upon one piece of paper or many. The fact that a coupon may be severed from the principal note and pass into other hands and thus give different persons rights, should not make any difference in construing the contract when executed, or so long as it remains entire in the hands of the original parties." And for that reason I should dissent in this case, even though it were a decision that interest is collectible upon interest coupons other than those of municipal corporations. The supreme court, however, reversed that case upon appeal (137 Ill. 443), not upon principle, but because the matter was *stare decisis;* and I dissent here because the matter is *stare decisis* in this state. We have four cases, decided long after the adoption of the contrary rule by the supreme court of Illinois and by the supreme court of the United States, which hold in positive and emphatic language that, upon grounds of public policy, compound interest is not collectible in the courts of this state. These cases are mentioned in the opinion, and, in my judgment, are abrogated and overruled, without any discussion at all of the principles upon which they are based.

In the case of *Hochmark v. Richler*, 16 Colo. 263, a promissory note had been given for $177, providing for the payment of interest after maturity at the rate of three per cent per month. The court found that the $177, the principal of the note, consisted of two items—$150, the actual loan, and $24, interest; and the court held that interest upon interest could not

be collected, even though included as principal in a promissory note. The court says: "A disposition undoubtedly appears in some of the modern decisions and text-books to reject the doctrine that compound interest contracted for *in advance* is *per se* unlawful. But, the question being *stare decisis* in this state, and there being much to commend the doctrine, it will not now be disturbed. We do not intimate that the arrangement would have been illegal had the promise of appellant to pay compound interest been made *after* instead of *before* the interest to be compounded had accrued. The fact that compound interest was thus provided for, did not, however, as counsel contends, render the entire contract usurious and void; courts, upon grounds of public policy, simply decline to enforce payment of interest upon interest."

In the case of *Denver Brick & Manufacturing Co. v. McAllister*, 6 Colo. 261, this court construed the statute relating to interest, which is now § 2252, Mills Annotated Statutes, and said: "It may be true that interest, when it has become payable, is 'money become due,' but we think that a fair construction of this statute will allow the language to cover only interest upon the principal, within the legislative intent, especially in view of the provision allowing any rate to be agreed upon." So, according to the previous decisions of this court, this statute does not authorize the awarding of interest on overdue interest.

I will concede that if one executes several promissory notes for the interest or installments of interest due upon a principal note, and the installment notes are transferred before maturity to a *bona fide* purchaser, the defense that they provide for compound interest will not be available; but unless such

notes have passed into the hands of a *bona fide* pur-
chaser, before maturity and without notice that they
are for interest, it seems to me that the rule an-
nounced in *Hochmark v. Richler*, cited above, should
control, and that it cannot be evaded by so simple
an expedient as that of attaching interest coupons.

The language of the court of appeals in the case of
*W. S. Bank v. Town of Solon*, 136 N. Y. 481, com-
mends itself to me as being reasonable, and as sus-
taining the rule hitherto enforced in this state against
the allowance of compound interest.    In that case
the court says: "In *Bailey v. County of Buchanan* (115
N. Y. 297) Earl, J., said that while it was true that
past due coupons payable to bearer when detached
from the bonds are for many purposes separate and
independant instruments which may be negotiated
and sued upon without the production of the bonds,
yet such coupons always have some relation to the
bonds; that until negotiated or used in some way they
serve no independant purpose; that while they are
in the hands of the holder they remain mere inci-
dents of the bonds and have no greater force or ef-
fect than the stipulation for the payment of interest
contained in the bonds; and that while they continue
in such ownership and possession it can make no dif-
ference whether they are attached or detached, as
they are mere evidences of the indebtedness for the
interest stipulated in the bonds.    I think that adjudi
cation concludes us, and a re-examination of the
question in the light of the very full and able discus-
sion in the present case only strengthens the conclu-
sion then reached in which we all concurred.    Inter-
est, as a rule, follows the principal without becoming
principal, and cannot be compounded by force merely
of the contract; but that general rule has been modi-

fied somewhat by an exception growing out of the character and purpose of interest coupons. They may become separate and independent instruments. When they do, the exception is for the first time needed and for the first time applies. Until they do the promise is merely to pay interest and is governed by the usual rule. They do not become separate and independent instruments until they are utilized as such. Before that occurs and while they remain in the hands of the holder of the bonds the occasion for the exception does not apply. That is plaintiff's situation.      *      *      *      It follows therefore that the judgment for the plaintiff was erroneous to the extent of its award of interest upon the coupons *      *      *      ."

The judgment of the district court having included interest upon interest, and this court having held in the cases of *Reithman v. Filmore*, 6 Colo. 121; *D. B. & M. Co. v. McAllister*, 6 Colo. 261; *Beckwith v. Beckwith*, 11 Colo. 568; and *Hochmark v. Richler*, 16 Colo. 263, that upon grounds of public policy interest upon interest is not recoverable in this state, and that there is no moral or legal obligation to pay such interest, I think the judgment of the district court should be reversed.